UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Viacheslav Tsikhotskyi</u>


      v.

Civil No. 1:26-cv-00249-JL-TSM
Opinion No. 2026 DNH 055


<u>Esker Lee Tatum, et al.</u>


### ORDER

      This habeas case concerns the government's authority to re-detain a noncitizen who was previously released into the United States on humanitarian parole and to continue that detention without an individualized bond hearing.  Petitioner Viacheslav Tsikhotskyi, a native and citizen of Ukraine, is currently in immigration custody at FCI Berlin while his removal proceedings remain pending.  He challenges both his re-detention in 2025 following several years of compliance with conditions of release and his continued detention without a custody redetermination hearing, asserting violations of the Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedure Act.

      This court has jurisdiction under 28 U.S.C. §§ 1331 and 2241.  Because the Due Process Clause does not require a pre-deprivation hearing before revocation of humanitarian parole but does prohibit the petitioner's prolonged detention without an individualized bond hearing, the petition is granted in part.

### I.    Background

      Tskihotskyi is a native and citizen of Ukraine who was granted lawful permanent resident status in or about 2002.[1]  In 2006, he pled guilty in Massachusetts state court to multiple offenses, including breaking and entering and receiving stolen property.[2]  Based on that plea, the government initiated removal proceedings, and on September 3, 2008, an Immigration Judge ordered Tskihotskyi removed from the United States.[3]  The government physically removed him to Ukraine on October 15, 2008.[4]

      Tsikhotskyi later sought to reenter the United States and, on September 1, 2022, applied for admission at a port of entry in San Ysidro, California.[5]  He was detained and served with a notice to appear charging him as inadmissible for lack of valid entry

---

[1] Form I-213 (doc. no. 1-1) at 2.

[2] Pet. (doc. no. 1) ¶ 21.

[3] Form I-213 (doc. no. 1-1) at 3.

[4] *Id.*

[5] Notice to Appear (doc. no. 8-3).

documents.[6]  After several months in custody, the government paroled him on humanitarian grounds, contingent upon his payment of a $15,000 bond and enrollment in the alternatives-to-detention program.[7]  *See* 8 U.S.C. § 1182(d)(5)(A) (humanitarian parole statute); *see also* 8 C.F.R § 212.5(b).  Although the government allegedly terminated his alternatives-to-detention enrollment in less than a month, his humanitarian parole status was undisturbed and he was permitted to continue living with his family during the pendency of his removal proceedings.[8]

In February 2025, after allegedly failing to appear for a scheduled immigration check-in, ICE cancelled Tsikhotskyi's parole and took him back into custody.[9]  He sought review of his detention before an Immigration Judge but withdrew his initial request for bond redetermination, and a subsequent request was denied on the ground that he was statutorily ineligible for bond under 8 U.S.C. § 1225.[10]

On July 29, 2025, an Immigration Judge denied Tsikhotskyi's applications for relief and ordered him removed to Ukraine.[11]  Tsikhotskyi appealed that decision to the Board of Immigration Appeals ("BIA").[12]  While the appeal was pending, a Massachusetts state court vacated his underlying 2006 criminal convictions, and the charges were dismissed.[13]  In light of that development, the BIA granted Tsikhotskyi's motion to remand on March 31, 2026, for further proceedings concerning his eligibility for relief.[14]  Tsikhotskyi's removal proceedings remain pending before the Immigration Court, and he remains in immigration custody.

## II.    **Analysis**

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Here, Tsikhotskyi petitions for habeas corpus relief on the grounds that that his re-detention by immigration authorities violates the Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act.  He contends that he is not subject to mandatory detention under 8 U.S.C. § 1225, but rather falls within the discretionary detention framework of § 1226, as reflected in the government's own custody determinations and prior decision to release him on bond.  He further asserts that the Due Process Clause prohibits his re-detention absent a pre-deprivation hearing and a showing of changed circumstances demonstrating by clear and convincing evidence that

---

[6] *Id.*

[7] Sept. 5, 2022 Notice of Custody Determination (doc. no. 8-4); Notification to Grant Parole (doc. no. 8-5).

[8] *See* Decl. of Brian E. Sullivan (doc. no. 8-12) ¶ 18.

[9] *Id.* ¶ 20.

[10] *Id.* ¶¶ 20-21.

[11] *Id.* ¶ 22.

[12] *Id.*

[13] *Id.* ¶ 23.

[14] *Id.* ¶ 24.

he poses a danger to the community or a risk of flight.  He also argues that his re-detention without individualized process or justification was arbitrary and capricious in violation of the APA.  As to relief, he requests that the court order his immediate release under the same conditions previously imposed rather than a bond hearing.

### A. Pre-deprivation hearing

Tsikhotskyi contends that his re-detention in 2025, without a showing of changed circumstances and without a pre-deprivation hearing, violated the Due Process Clause.[15] Tsikhotskyi argues that his release in 2022 necessarily reflected a determination that he was neither dangerous nor a flight risk and that, having made such a determination, due process requires a demonstration of changed circumstances at a pre-deprivation hearing before returning him to immigration custody.  The government does not dispute that Tsikhotskyi's prior release on parole and placement in an alternatives-to-detention program represents a contemporaneous assessment that he did not pose a flight risk or danger to the community.  It contends, however, that such a release did not give rise to any continuing liberty interest requiring additional process prior to re-detention.

The court agrees with the government.  Tsikhotskyi does not dispute that, when attempted to re-enter the United States in 2022, he was detained as an applicant for admission under 8 U.S.C. § 1225 and was subsequently released into the United States pursuant to the humanitarian parole statute, 8 U.S.C. § 1182(d)(5).  Release under that provision is expressly discretionary and may be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served," at which point the noncitizen is to "be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A).  Unlike releases following the entry of a final removal order, which are governed by 8 U.S.C. § 1231, there is no accompanying statute or regulation that requires the government provide advance notice to revoke humanitarian parole or an opportunity to be heard prior to re-detention; the law requires that ICE serve the noncitizen with "written notice of termination of parole" in the form of "a charging document."  8 C.F.R. § 212.5; see *Vo v. Lyons*, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026) (noting that the implementing regulations for a release under § 1231 "require, at minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond").[16]  Tsikhotskyi received explicit warning in this regard upon his release in December 2022, at which time ICE provided him with a letter explaining that his parole under 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5 was "entirely within the discretion of ICE" and could be "terminated at any time for any reason."[17]

---

[15] The Fifth Amendment's Due Process Clause provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.

[16] Tsikhotskyi does not dispute that he received such a charging document when ICE took him back into custody in 2025.

[17] Dec. 16, 2022 Notification to Grant Parole (doc. 8-5).

Tsikhotskyi correctly observes that the Due Process Clause may provide procedural protections beyond those expressly set forth in the statute. But he cites no controlling authority holding that a noncitizen in his posture—i.e., an applicant for admission released on discretionary humanitarian parole—is entitled to a pre-deprivation hearing or a threshold showing of changed circumstances before that parole is revoked. Nor has Tsikhotskyi identified any persuasive authority from within this circuit adopting such a rule, and the court is aware of none. In the absence of such authority, the court declines to impose a pre-deprivation hearing requirement in this context. Accordingly, the court concludes that Tsikhotskyi's re-detention without a pre-deprivation hearing did not violate the Due Process Clause.[18]

### B. Lawfulness of current detention

Having determined that the government was not required to provide a pre-deprivation hearing, the court turns to the lawfulness of the Tsikhotskyi's ongoing detention. At this point, ICE has detained Tsikhotskyi for over one year without a custody redetermination hearing before an Immigration Judge. The government maintains that this detention is lawful under 8 U.S.C. § 1225.

The court finds the government's argument on this point unavailing. The circumstances presented here are substantially similar to those in *Destino v. FCI Berlin, Warden*, 2025 WL 4010424 (D.N.H. Dec. 24, 2025) (Elliot, C.J.). In *Destino*, the court considered a habeas petition filed by a noncitizen who, like Tsikhotskyi, was paroled into the United States under § 1182(d)(5) and re-detained years later after living continuously in the country, complying with conditions imposed by immigration authorities, and developing substantial ties to the community. *Id.* at *1-2. The court held that, under such circumstances, "detention without a bond hearing offends the Due Process Clause regardless of whether the INA authorizes or mandates it." *Id.* at *3. Indeed, the respondents concede that, if this court were to apply the reasoning of *Destino* to the present case, it would likely reach the same result.

The court agrees that *Destino* is both factually analogous and persuasive, adopts that reasoning here, and concludes that Tsikhotskyi's prolonged detention without an individualized bond hearing violates the Due Process Clause.

### C. Remedy

Having found a due process violation, the court therefore turns to the appropriate remedy. Tsikhotskyi contends that "immediate release on his prior terms of supervision, including a $15,000 bond" is the relief warranted for a petitioner in Tsikhotskyi's position.[19] The court is unpersuaded.

---

[18] Because the court concludes that the Due Process Clause does not require the government to demonstrate changed circumstances prior to re-detention, it likewise rejects Tsikhotskyi's claim that his re-detention was arbitrary and capricious under the Administrative Procedure Act and need not address that argument further.

[19] Pet.'s Reply (doc. no. 10) at 1.

4

The due process violation identified in this case does not stem from Tsikhotskyi's re-detention itself, but from the government's failure to provide a timely bond hearing at which the necessity of the petitioner's continued detention can be assessed. Under these circumstances, the appropriate remedy is not outright release, but rather a prompt bond hearing that satisfies constitutional requirements. *See Destino*, 2025 WL 4010424, at *13 (explaining that "a bond hearing in which the government is held to its burden is the constitutional minimum requirement of due process"). At that hearing, the government must bear the burden of demonstrating that Tsikhotskyi poses either a danger to the community or a risk of flight. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 40 (1st Cir. 2021). In addition, in light of the government's prior determination that Tsikhotskyi could be safely managed through an alternatives-to-detention program and the respondents' concession at oral argument that consideration of alternatives to detention is contemplated by the relevant statutory and regulatory scheme, the court joins other courts within this circuit in finding due process requires the Immigration Judge in this case "to consider alternatives to detention as part of their assessment of danger and flight risk at [the petitioner's] bond hearing." *Higiro v. Nessinger*, 2026 WL 710297, at *7 (D.R.I. Mar. 13, 2026) (collecting authorities); *see also Doe v. Tompkins*, No. 18-12266, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), *aff'd*, 11 F.4th 1 (1st Cir. 2021) ("The immigration court shall properly allocate the burden of proof and consider alternative methods to ensure the safety of the community and Doe's future appearances like GPS monitoring."). The court thus orders that Tsikhotskyi be afforded a prompt bond hearing before an Immigration Judge at which the Immigration Judge shall consider alternatives to detention as part of his or her assessment of flight risk and dangerousness.

Finally, the court notes its concern with the government's suggestion that the Tsikhotskyi's "extensive criminal history may trigger mandatory detention under 8 U.S.C. § 1226(c)." The respondents cite no authority for the proposition that Tsikhotskyi's detention may simultaneously be governed by both §§ 1225 and 1226. Having identified § 1225 as the basis for detention, the respondents have waived any argument that Tsikhotskyi is detained under 1226(c). *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Pickering v. Citizens Bank, N.A.*, 2019 WL 3457602, at *4 (D.N.H. July 31, 2019) (DiClerico, J.) ("[A] court is not obligated to make arguments on behalf of a party, particularly a party represented by counsel, and may disregard arguments that are not developed."); *see also Dahua Tech. USA, Inc. v. Zhang,* 138 F.4th 1, 11 (1st Cir. 2025) (stating that a party is generally responsible for "the consequences of its decision to press one theory to the exclusion of another.").

### III.    Conclusion

For the reasons stated, Tsikhotskyi's habeas petition is **GRANTED IN PART**. The government is hereby **ORDERED** to provide Tsikhotskyi with a bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a) on or before **May 20, 2026**, during which

the Immigration Judge must consider (based on the government's concession that such a showing would be appropriate here) whether alternatives to detention would be adequate to ensure the safety of the community and Tsikhotskyi's future appearances in immigration proceedings.  The parties shall also file a status report within five (5) days of Tsikhotskyi's bond hearing, stating whether he has been granted bond and, if his request for bond was denied, the reason for that denial.  The petition is denied in all other respects.

**SO ORDERED.**

_____

Joseph N. Laplante
United States District Judge

Dated: May 8, 2026

cc:    Counsel of Record